UNITED STATES of America,
Appellant,

v.

Wayne HERMAN and Van
Talley, Defendants,

Raulo Jeffers, Defendant–Appellee.

Docket No. 98–1391.

United States Court of Appeals,
Second Circuit.

Argued March 11, 1999.

Decided March 30, 1999.

Dan Himmelfarb, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, Ira M. Feinberg, Assistant

United States Attorney, of counsel ), for Appellant.

Howard L. Jacobs, New York, N.Y., for Defendant–Appellee.

Before: WALKER, McLAUGHLIN, KEITH,* Circuit Judges.

McLAUGHLIN, Circuit Judge:

## BACKGROUND

In February and April, 1997, Raulo Jeffers sold a little marijuana to an undercover police officer in the Washington Square Park area of lower Manhattan. Both sales were made within 1,000 feet of an elementary school in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(D) & 860, and 18 U.S.C. § 2.

In an unrelated criminal scheme undertaken between April 27 and June 16, 1997, Jeffers also defrauded a health care benefit program in violation of 18 U.S.C. §§ 1347 & 2. On four separate occasions during that period, Jeffers used his Medicaid card and forged prescriptions to obtain the performance enhancing steroid "Serostim" from a pharmacy for a co-payment of only $2.00. The rest of the drug's cost, more than $1,700 per prescription, was billed to Medicaid. Jeffers sold the Serostim to an individual named Kevin Kosik for about $250.

Jeffers was arrested on the health care fraud charges on June 26, 1997, and, then, indicted on the "schoolhouse" drug charges on July 1, 1997. After twelve days in custody, Jeffers was released on bail and shortly thereafter he initiated plea negotiations with the government.

Between 1976 and his 1997 arrest in this case, Jeffers had accumulated 20 prior convictions. Because two of these convictions were felonies, Jeffers is now a "career offender" under the United States Sentencing Guidelines. See U.S.S.G. § 4B1.1.

As such, he faced a sentence of 77 to 96 months' imprisonment if convicted for the schoolhouse drug offenses. See U.S.S.G. § 4B1.1 & Ch.5, Pt. A, Sentencing Table. He also faced another possible consecutive sentence of 21 to 27 months' imprisonment if convicted separately on the health care fraud charges. See id. As part of Jeffers' plea agreement, however, the government agreed to: (1) combine the charges against Jeffers in a single indictment; and (2) drop the enhanced schoolhouse charges. Both sides stipulated to a Guideline range of 41 to 51 months' imprisonment. In exchange, Jeffers agreed to plead guilty and promised not to seek a downward departure at sentencing.

In December, 1997, Jeffers pled guilty before Magistrate Judge Dolinger of the United States District Court for the Southern District of New York to one count of conspiracy to sell marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D) & 846, and one count of Medicaid fraud in violation of 18 U.S.C. §§ 1347 & 2.

In May, 1998, Jeffers appeared before United States District Court Judge Kimba M. Wood for sentencing. The district court began the hearing by remarking on the Pre–Sentence Report ("PSR"), which recommended a sentence of 51 months' imprisonment—the top of the range previously stipulated to by Jeffers and the government. In making this recommendation, the PSR explained that Jeffers' criminal career had "spanned the course of three decades," and that, while he had "been given ample opportunity for rehabilitation, he has failed to make the most of those opportunities."

Notwithstanding the PSR's recommendation, the district court sua sponte raised the possibility of a downward departure. The court stated that Jeffers "is a recidivist, largely from selling drugs to support his habit." Citing what it perceived to be Jeffers' "significant" efforts at drug reha-

---

* The Honorable Damon J. Keith, of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

bilitation, as well as his post-arrest employment, the district court adjourned sentencing to allow the parties to make written submissions on whether Jeffers should receive a downward departure.

In its responsive submissions, the government argued that Jeffers' purported drug rehabilitation did not warrant a downward departure because any such rehabilitation was not "extraordinary" as this Court's case law requires. At the ensuing sentencing hearing in June, the district court initially seemed swayed by the government's arguments. The court began by stating:

> My review of the government's submission leads me to believe that this is not a case where I should depart downward. Human sympathy leads me to want to because I believe there is a chance, albeit a slim chance, that Jeffers will not commit this type of crime again.

Responding to the district court's invitation to address the issue, defense counsel represented that Jeffers had been "drug free for over 2 years" and argued for a departure on that basis. The government disputed this representation, pointing out that Jeffers had reverted to drug use following his girlfriend's death of AIDS in August 1996. The government also pointed out that Jeffers had occasionally been off drugs in the past during his 20–year criminal career, but had nevertheless reverted to drugs and criminality.

In the ensuing brief colloquy, the conflict over the duration of Jeffers' rehabilitation was not resolved. As Jeffers' counsel concedes in his brief on appeal "the record does not precisely show the exact period he was drug free." Indeed, defense counsel is now prepared to represent only that "we know [Jeffers] was drug free while under pretrial supervision for about a year."

Despite the obvious confusion, the district court decided that Jeffers' drug rehabilitation justified a downward departure. The court stated: "I do find that your rehabilitation and your maintaining yourself drug free for over 2 years is an extraordinary circumstance that warrants a downward departure." Accordingly, the district court departed from the stipulated Guideline range of 41 to 51 months' imprisonment to a sentence of time served, plus four years probation.

Making a motion to correct sentence pursuant to Fed.R.Crim.P. 35(c), the government argued that there was no record evidence to support the district court's finding that Jeffers had been "drug free for over two years." The district court denied the government's motion on the day it was filed, explaining in a hand-written endorsement that: "[t]he court's statement that defendant had been drug free for two years should have been phrased as 'drug free for almost two years.'" In the subsequently filed judgment of conviction, the district court wrote:

> I find that defendant's extraordinary success at rehabilitation (from his prior addiction to marijuana and crack, he has remained drug free and employed for almost two years) render it unlikely that he will revert to his past criminal conduct.... I depart downward to time served with close supervision.

The government now appeals.

## DISCUSSION

The government maintains that the district court's finding that Jeffers had been drug free for "almost two years" at the time of sentencing was clearly erroneous and that it abused its discretion in granting a downward departure on that basis. We agree.

█ In this circuit, a district court has the discretion to depart downwardly from the applicable Guideline range on the basis of drug rehabilitation. *See United States v. Maier*, 975 F.2d 944, 948 (2d Cir.1992). Nevertheless, drug rehabilitation programs, which are " 'easily entered but difficult to sustain,' " have not been permitted to become " 'an automatic ground for ob-

taining a downward departure.'" *United States v. Williams,* 65 F.3d 301, 305 (2d Cir.1995) (quoting *Maier,* 975 F.2d at 948). We have repeatedly emphasized that if a departure is to be based on the defendant's efforts at drug rehabilitation, those efforts must be truly "'extraordinary.'" *Id.* (quoting *Maier,* 975 F.2d at 948); *see United States v. Bryson,* 163 F.3d 742, 747 (2d Cir.1998).

■ In determining whether a defendant's rehabilitative efforts have been sufficiently extraordinary to warrant a downward departure, a sentencing court "'must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing.'" *United States v. Galante,* 111 F.3d 1029, 1033 (2d Cir.1997) (quoting *Koon v. United States,* 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). So long as that "refined assessment" has occurred, this Court will not disturb a sentencing court's decision to depart unless the factual findings underlying that decision are clearly erroneous. *See Bryson,* 163 F.3d at 747; *United States v. Franklyn,* 157 F.3d 90, 97 (2d Cir.1998).

■ We conclude that the district court's factual finding that Jeffers had been drug free for "almost two years" at the time of sentencing was clearly erroneous. As noted, even Jeffers' counsel concedes that "the record does not precisely show the exact period [Jeffers] was drug free," and is able to represent only that "he was drug free ... for about a year" prior to sentencing. Because there is no legitimate reason to believe that the district court would have downwardly departed had Jeffers revealed this at sentencing, we remand for further findings and resentencing. *See Bryson,* 163 F.3d at 748; *United States v. Barton,* 76 F.3d 499, 504 (2d Cir.1996).

■ Jeffers contends that in spite of the district court's erroneous finding regarding the duration of his rehabilitation, this Court can still affirm his sentence because the district court determined that it is unlikely that he will commit future crimes. Jeffers relies on two cases in which this Court upheld departures for preliminary periods of rehabilitation—similar to the "about a year" he proffers here—where such rehabilitation lessened the likelihood of future criminality. *See Williams,* 65 F.3d at 308 (upholding a departure based on inmate's acceptance into a 1,000 hour prison rehabilitation program, because "if [the defendant] is cured of his addiction, [the departure] may ultimately serve to protect the public from future criminal acts"); *Maier,* 975 F.2d at 948 (upholding departure where defendant had participated in a drug program for a year and three months prior to sentencing, because such rehabilitation could serve to "benefit[ ] the individual and society").

Both *Maier* and *Williams* are unhelpful. The departures in those cases were upheld only after the district court had "conscientiously examined all of the pertinent circumstances" associated with the defendants' rehabilitation. *Maier,* 975 F.2d at 948; *see Williams,* 65 F.3d at 304, 306. Here there was no such examination. Not only did the district court fail to ascertain adequately the approximate duration of Jeffers' rehabilitation, it failed to make any findings to explain its belief that he was unlikely to commit future crimes.

Jeffers is a career recidivist. His prior efforts at rehabilitation have always been followed by serious criminal conduct. After receiving drug treatment in 1984 and 1985, he proceeded to acquire at least eight criminal convictions in the next eight years, including convictions for the possession or sale of cocaine, crack, heroin, and marijuana. Similarly, after initiating drug treatment in 1996, Jeffers was convicted three times for the sale of marijuana. He also committed the crimes at issue on this appeal. As the district court itself acknowledged minutes before downwardly departing, there is but "a slim chance" that Jeffers will not commit crime again. The current state of the record supports that

acknowledgment. Accordingly, we remand for further findings as to whether Jeffers' rehabilitative efforts have been sufficiently extraordinary to warrant any downward departure. *See Barton,* 76 F.3d at 504.

■ On remand, the district court should consider that rarely, if ever, will drug rehabilitation undertaken *before* the commission of a crime constitute an appropriate predicate for a downward departure. The rationale for the rehabilitation departure is that because "[s]ubstance abuse is highly correlated to an increased propensity to commit crime," U.S.S.G. § 5H1.4, rehabilitation from drugs will lessen the likelihood of future criminality. *See Williams,* 65 F.3d at 307–308. That rationale obviously fails where the rehabilitated drug abuser continues to commit crimes. Thus, the availability of the rehabilitation departure always has been limited to those defendants who have exhibited extraordinary *post-offense* efforts to overcome drug addiction. *See Bryson,* 163 F.3d at 747; *Williams,* 65 F.3d at 305; *Maier,* 975 F.2d at 948; *see also United States v. Workman,* 80 F.3d 688, 701 (2d Cir.1996).

We raise this issue because, as the government points out, had Jeffers been drug free for "almost two years" prior to sentencing as the district court found, he would also have been drug free for at least six months prior to committing the crimes in this case. Thus, Jeffers was merely a rehabilitated drug addict, not a rehabilitated criminal. Such rehabilitation is not an appropriate ground for departure. After all, it is the successful rehabilitation of the criminal that is the "valuable achievement of the criminal process." *United States v. Core,* 125 F.3d 74, 78 (2d Cir.1997).

## CONCLUSION

We remand for further findings and re-sentencing in accordance with this opinion.